IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS SPRINGFIELD DIVISION

| | |
|---|---|
| BETTY PHELPS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 17-3131 |
| GREAT AMERICAN INSURANCE GROUP, | ) ) ) ) |
| Defendant. | ) ) |

# REPORT AND RECOMMENDATION

TOM SCHANZLE-HASKINS, U.S. Magistrate Judge:

This matter comes before the Court on Plaintiff Betty Phelps's Motion for Leave to File Amended Complaint Instanter (d/e 6) (Motion). The Court should freely grant leave to amend pleadings when justice so requires. Fed. R. Civ. P. 15(a)(2). The Court, however, may deny requests for leave to amend pleadings for appropriate reasons, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962); accord Garcia v. City of Chicago, Ill., 24 F.3d 966, 970 (7th Cir. 1994). Defendant Great American Insurance Company (Great American) opposes the Motion

on the grounds that the proposed amendment would be futile. For the reasons set forth below, this Court determines that the amendment would be futile. The Court Motion therefore recommends that the Motion should be DENIED.

## STATEMENT OF FACTS

This case is at the pleading stage. A proposed amended pleading at this stage would be futile if it fails to state a claim. See Glick v. Koenig, 766 F.2d 265, 268 (7th Cir. 1985) (A proposed amended pleading must be able to withstand a motion to dismiss for failure to state a claim.). The Court, therefore, will evaluate whether the proposed Amended Complaint (Amended Complaint) attached to the Motion would state a claim on which relief would be granted. The Court assumes the factual allegations in the Amended Complaint are true and views those allegations in the light most favorable to Phelps. Anderson v. Morrison, 835 F.3d 681, 682 (7th Cir. 2016). See also, Alam v. Miller Brewing Co., 709 F.3d 662, 665-66 (7th Cir. 2013). The Court may also consider documents referred to in the Amended Complaint and central to the claims. 188 LLC v. Trinity Industries, Inc., 300 F.3d 730, 735 (7th Cir. 2002).

Phelps owned a commercial building located at 120 North Washington Street, Bunker Hill, Macoupin County, Illinois (the Property).

She ran fitness center on the Property. On or about June 14, 2014, a fire (2014 Fire) started in the adjoining building north of the Property. The 2014 Fire spread and damaged the Property. Phelps had casualty insurance coverage on the Property through Pekin Insurance Company (Pekin). Phelps submitted a claim to Pekin for the damage caused by the 2014 Fire. Pekin settled the claim for $218,000.00. Pekin also canceled the insurance policy on the Property. Amended Complaint, ¶¶ 1, 3-5, 7, and Exhibit D, Email from Verticchio Law Carlinville dated September 13, 2016 (September 13 Email).

The 2014 Fire did not destroy the Property completely. Phelps intended to use the $218,000.00 paid by Pekin to repair the Property and replace the damaged equipment. The United Community Bank of Bunker Hill (Bank) held a mortgage on the Property to secure its loan to Phelps. Pursuant to the terms of the mortgage, Phelps had to provide casualty insurance for the Property sufficient to cover the outstanding indebtedness secured by the mortgage on the Property. Phelps's outstanding indebtedness was approximately $98,000. Amended Complaint ¶¶ 7, 9.

Phelps attempted to secure replacement casualty insurance for the Property, but was unsuccessful. Phelps notified the Bank that she could not find insurance for the Property after the damage from the 2014 Fire.

Representatives of the Bank advised Phelps that the Bank would place the Property on its "forced" insurance coverage policy and that the Property "would be insured for her benefit on the Bank's insurance." Phelps would be required to pay the premium for the insurance. Amended Complaint ¶¶ 10-11.

The Bank maintained a forced coverage policy with Defendant Great American. Affidavit of Michael Matthews (d/e 4), Exhibit A, Mortgage Protection Insurance Policy Number 5177936, dated October 1, 2003 (Policy).[1] Under the Policy, Great American provided casualty insurance to the Bank for property in which the Bank had a mortgage interest and for which acceptable hazard insurance had been cancelled or had not been received from the mortgager. Policy, § I Agreement.[2] The Bank was the Named Insured on the Policy. Policy, at 1 Declarations. The Declarations page of the Policy contained the following statement in bold red ink:

> **Unless indicated otherwise by endorsement, this policy does not provide coverage . . . for the interest or equity of the mortgagor. This is creditor placed insurance, protecting your mortgagee interest, subject to policy terms and conditions. Please read your policy for specific terms and conditions of coverage.**

---

[1] The Court considers the Policy because the Amended Complaint refers to it and it is central to the claims. 188 LLC, 300 F.3d at 735.

[2] The Policy also covered the Bank's other property not relevant to this case, such as property purchased by the Bank at foreclosure.

Policy, at 1, Declarations (emphasis in original).

The words "you" and "your" in the Policy referred to the Bank as the Named Insured. The words "we" and "us" referred to Great American. Policy, at 2 Introductory statement. The Definitions in the Policy included the following:

> A. **Named Insured** means the creditor, lending institution, company, or person holding or servicing the **mortgagee interest** on the described location.
>
> B. **Mortgagor** is the purchaser of the **described location** for whom **you** have financed property or which **you** are servicing for others under the terms of a written agreement. The **mortgagor** is not a **Named Insured** under this policy.
>
> . . . .
>
> F. **Mortgagee interest** means **your** interest in the **described location** under a **mortgage agreement**, including the **mortgagee interest** of others **you** service under a written servicing agreement.

Policy, Definitions A, B, and F (emphasis in the original).[3]

The Policy stated that maximum amount that Great American would pay on a covered loss to mortgage parcels such as the Property:

> The most **we** will pay for loss:
>
> b. as respects **buildings** under **Section I - Creditor Placed Insurance**, is the lesser of:
>     (i.) the **Amount of Insurance**;
>     (ii.) the **replacement cost** of the damaged property;

---

[3] All defined terms are printed in bold face in the Policy.

(iii.) the **actual cash value** of the damaged property; or
(iv.) **our** Limit of Liability appearing in the LIMIT AND DEDUCTIBLE SCHEDULE.

Policy, § V.A.(1)(b) Loss Settlement as amended by the Actual Cash Value Settlement—Buildings Endorsement. The Policy stated that Great American's obligation to pay a loss was subject to a deductible stated in the Policy. Great American would be obligated to pay only the portion of the loss that exceeded the deductible up to the maximum amount for the covered loss. The relevant deductible was $1,000.00 per occurrence. Policy, § V.B. Deductible, and Limit and Deductible Schedule Endorsement.[4]

On March 30, 2015, Great American issued a one-page document entitled Evidence of Insurance. Amended Complaint, Exhibit A, Evidence of Insurance. The Evidence of Insurance stated that the Property was covered under the Policy up to a limit of $97,400.00. The Evidence of Insurance referred to the Policy as the Master Policy. The Evidence of Insurance listed Phelps as the Borrower and the Bank as the Insured/Lender. The Evidence of Insurance identified the Property by its address. The Evidence of Insurance stated that the deductible was

---

[4] Different deductibles applied for other perils not relevant to this case.

$1,000.00 for perils caused by fire.[5]  The annual premium was listed as $2,289.00.  The Evidence of Insurance ended with the following statement in all capital letters and bold face type:

> **THIS COVERAGE IS SUBJECT TO ALL TERMS, CONDITIONS AND EXCLUSIONS OF THE MASTER POLICY.  THIS EVIDENCE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICY. IT IS ISSUED AS A MATTER OF INFORMATION ONLY. THIS COVERAGE IS EXCESS OVER ANY OTHER VALID INSURANCE COVERING THE PROPERTY WHETHER COLLECTIBLE OR NOT. FOR A COMPLETE COPY OF THE MASTER POLICY, CONTACT YOUR LENDER.**
>
> **ANY LOSS OR DAMAGE INVOLVING MOLD, MILDEW OR FUNGI OF ANY KIND IS EXCLUDED FROM THE MASTER POLICY.**
>
> **THE PREMIUM ON THIS POLICY IS LIKELY TO BE HIGHER THAN THE PREMIUM ON A POLICY YOU CAN OBTAIN THROUGH YOUR AGENT OR INSURANCE COMPANY. THIS POLICY MAY ALSO PROVIDE LESS COVERAGE THAN THE ONE SECURED THROUGH YOUR AGENT OR INSURANCE COMPANY.**

<u>Evidence of Insurance (emphasis in the original)</u>.  The Bank charged Phelps the premium for coverage under the Policy.  Phelps alleged that the Evidence of Insurance was the invoice for the premium.  Phelps alleges she is a third-party beneficiary of the Policy to the extent of her outstanding

---

[5] The $1,000.00 deductible applied to all other covered perils, which included perils by fire.

debt to the Bank of $97,400.00 secured by the mortgage on the Property. Amended Complaint, ¶¶ 14-18.

On or about January 28, 2016, another fire occurred (2016 Fire). The 2016 Fire started in the adjoining building to the south of the Property (South Parcel). The 2016 Fire spread and damaged the Property again. Phelps had not yet begun repairs on the Property when the 2016 Fire occurred. On May 12, 2016, Gateway Adjusters of Collinsville (Gateway), Illinois inspected the Property. Gateway estimated the replacement cost value of the loss to be $119,659.83. Amended Complaint, ¶ 20 and Exhibit B, Estimate, at 7, 9.

After the 2016 Fire, the City of Bunker Hill, Illinois (City) issued a "Notice of Nuisance" (Notice) for the Property and the South Parcel. The buildings on the Property and the South Parcel had a common supporting wall. The Notice stated that the damage to the building on the South Parcel was so severe that the building needed to be demolished. Upon demolition, the building on the Property would also collapse because of the demolition of the common wall. The Notice stated that the building on the Property also had to be demolished because of the situation with the common wall. Amended Complaint, ¶ 21.

The City filed Emergency Motions for Temporary Equitable Relief in the Circuit Court for Macoupin County, Illinois (State Court) to secure a court order to demolish the buildings on the South Parcel and the Property. On February 26, 2016, the State Court issued an order authorizing the emergency demolition of the two structures. Amended Complaint, ¶ 22 and Exhibit C, Order entered in City of Bunker Hill v. Bunker Hill Food & Beverage, Inc., Case No. 2014-MR-10 and City of Bunker Hill v. Betty Phelps, Case No. 2016-MR-17, dated February 26, 2016 (Order). The Order stated that Phelps had abandoned all interest in the Property and had no objection to the City abating the nuisance. Order, ¶ 3. The Court authorized the City to demolish the buildings and further ordered that the cost of demolition and abatement of the nuisance would be a lien on the Property and the South Parcel. Order, at 2-3.

The City then demolished the building on the Property. The demolition costs totaled $19,500.00. Phelps alleges that she was required to pay those costs. Amended Complaint, ¶ 23.

On September 13, 2016, Phelps's counsel sent the September 13 Email to representatives of Great American. Phelps's counsel offered to settle the claim of loss on the Policy for $43,500.00, or roughly half of Phelps's outstanding indebtedness on the loan from the Bank secured by

the mortgage on the Property.  Amended Complaint, ¶ 25 and Exhibit D <u>September 13 Email</u>.

On September 20, 2016, the representative of Great American responded.  The representative of Great American took the position that the Policy covered the cost of additional repairs attributable to the 2016 Fire that were not included in the costs necessary to make the repairs attributable to the 2014 Fire.  The Great American representative stated that the cost of the additional repairs was $683.74.  The Great American representative stated that the Policy had a $1,000.00 deductible per occurrence and the repairs were under the amount of the deductible.  Great American, therefore, denied the claim because it took the position that the loss did not exceed the deductible.  <u>Amended Complaint</u>, ¶¶ 26-27 and Exhibit E, <u>Email dated September 20, 2016</u>.

Phelps alleges that Great American breached the Policy by refusing to pay the claim for the loss resulting from the 2016 Fire.  Phelps alleges that as a result of that breach, she is still obligated to pay the Bank the $97,400.00 debt secured by the Property.  <u>Amended Complaint</u>, ¶ 28.

## ANALYSIS

The proposed Amended Complaint alleges a claim for breach of the Policy (Count I) and a claim for punitive damages and attorney's fees for

vexatious and unreasonable refusal to pay Phelps's claim arising from the 2016 Fire pursuant to 215 ILCS 5/155 (Count II).

Great American argues that the Court, in its discretion, should deny leave to amend because filing the Amended Complaint would be futile. See Foman, 371 U.S. at 182. Great American argues that the proposed amendment would be futile because Phelps does not allege facts that show that she is either a party to the Policy or a third-party beneficiary of the Policy. She therefore cannot maintain an action for breach of contract claim for breach of the Policy under Illinois law. See Peleshak v. Verex Assurance, Inc., 272 Ill.App.3d 1077, 651 N.E.2d 562 (Ill.App. 1st Dist. 1995). She also cannot maintain an action under 215 ILCS 5/155 for vexatious and unreasonable refusal to pay a claim under the Policy because she is not an insured under the Policy. See Yassin v. Certified Grocers of Illinois, Inc., 133 Ill.2d 458, 466, 551 N.E.2d 1319, 1322 (Ill. 1990). Phelps argues that the proposed amendment would not be futile because she has alleged facts that would establish that she was a third-party beneficiary of the Policy.

A third-party beneficiary to a contract is not a party to a contract, but receives a direct benefit that the parties to the contract intended. Illinois distinguishes between third parties who receive an incidental benefit and

third parties who receive a direct benefit that the parties to the contract intended. Bank of America National Ass'n v. Bassman FBT, L.L.C., 2012 IL App (2d) 110729, ¶ 27, 981 N.E.2d 1, 11 (Ill.App. $2^d$ Dist. 2012)); see Quinn v. McGraw-Hill Companies, Inc., 168 F.3d 331, 334 (7th Cir. 1999). Third parties can bring an action on a contract only if the parties to the contract intended that the contract would confer a direct benefit on the third party. Bank of America, 981 N.E.2d at 11. Phelps was not a party to the Policy. The Policy was between Great American and the Bank. Phelps can only bring her claims in the Amended Complaint if the Bank and Great American intended that the Policy would confer a direct benefit on her.

Illinois law recognizes a strong presumption that the parties to a contract intend only to benefit themselves and not third parties. The presumption generally can only be overcome by clear language in the contract. Quinn, 168 F.3d at 334; Bank of America, 981 N.E.2d at 11; 155 Harbor Drive Condominium Ass'n v. Harbor Point, Inc., 209 Ill. App.3d 631, 647, 568 N.E.2d 365, 375 (Ill.App. 4th Dist. 1991) (quoting Wheeling Trust & Savings Bank v. Tremco, Inc., 153 Ill.App.3d 136, 140, 505 N.E.2d 1045, 1048 (Ill.App. 1st Dist. 1987)). Evidence of the surrounding circumstances at the time of execution of the contract may also overcome the presumption by showing implied intent, but the implication must be clear and strong:

> [C]ourts have accepted an implied showing where "the implication that the contract applies to third parties [is] so strong as to be practically an express declaration." Without an express declaration, in short, ambiguous language in a contract will not suffice to make someone a third-party beneficiary.

Quinn, 168 F.3d at 334 (quoting 155 Harbor Drive Condominium Ass'n, 209 Ill. 568 N.E.2d at 375) (internal citations omitted); see XL Disposal Corp. v. John Sexton Contractors Co., 168 Ill.2d 355, 361, 659 N.E.2d 1312, 1316 (Ill. 1995).

The language of the Policy does not show an intent to confer a direct benefit on Phelps. The Policy states that the Bank is the Named Insured and the Mortgagor, i.e. Phelps, is not a Named Insured. The Policy further states that the Policy provides no coverage for the Mortgagor's equity or other interest in the property securing the mortgage. The language of the Policy does not overcome the presumption that the parties to the Policy did not intend to confer a direct benefit on Phelps.

Phelps argues that the Evidence of Insurance plausibly shows that the parties intended to confer a direct benefit on Phelps under the Policy. The Court disagrees. The Evidence of Insurance states that the document was issued for informational purposes only and does not change any of the provisions of the contract. Thus, the clear language in the Policy that the

Mortgagor receives no direct benefit from the Policy is unaffected by the Evidence of Insurance.

Phelps relies on the statement in the Evidence of Insurance that, "**THE PREMIUM ON THIS POLICY IS LIKELY TO BE HIGHER THAN THE PREMIUM ON A POLICY YOU CAN OBTAIN THROUGH YOUR AGENT OR INSURANCE COMPANY. THIS POLICY MAY ALSO PROVIDE LESS COVERAGE THAN THE ONCE SECURED THROUGH YOUR AGENT OR INSURANCE COMPANY.**" Phelps argues that the statement shows an intent to confer a benefit on Phelps. The Court disagrees. The quoted language does not state an intent to provide coverage for Phelps. The two sentences only advise Phelps that she would be better off trying to find insurance elsewhere. Moreover, the preceding sentences state that the entire Evidence of Insurance was issued for informational purposes and did not change the terms of the Policy. The quoted sentence would not be sufficient to overcome a motion to dismiss. The proposed amendment, therefore, would be futile.

Phelps also relies on the allegation that representatives of the Bank told Phelps when it put the Property on the Policy that the Property "would be insured for her benefit on the Bank's insurance." When read favorably to Phelps, this allegation could be a declaration of an intent by the Bank to

confer a benefit on Phelps by placing the Property under the Policy. The statement, however, gives no indication that Great American intended to benefit Phelps directly, particularly in light of the clear language in the Policy that Great American only intended to insure the Bank. The alleged statement by the Bank representative alone, therefore, would not be sufficient to overcome the presumption that parties to a contract do not intend to benefit third parties. See Quinn, 168 F.3d at 334. Allowing Phelps to file the Amended Complaint, therefore, would be futile. The Motion should be denied.

Great America also revived its Motion to Dismiss (d/e 2). Great American's Response in Opposition to Plaintiff's Motion for Leave to File Amended Complaint Instanter and Revival of Motion to Dismiss (d/e 8) (Response), at 2 n. Phelps is directed to respond to the Motion to Dismiss.

THEREFORE, this Court recommends that Phelps's Motion for Leave to File Amended Complaint Instanter (d/e 6) should be DENIED. Defendant Great American has revived its Motion to Dismiss (d/e 2) pursuant to Local Rule 7.1(E). Plaintiff Phelps is directed to file a response to the Motion to Dismiss by October 2, 2017.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file a timely objection will constitute a waiver of objections on appeal.  See <u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).  See <u>Local Rule</u> 72.2.

ENTER:   September 11, 2017

*s/ Tom Schanzle-Haskins*
UNITED STATES MAGISTRATE JUDGE
